**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BOB G. JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-1955 |
| | § | |
| METROPOLITAN LIFE INSURANCE | § | |
| CO., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a suit for benefits under an employee-welfare benefit plan (the "Plan") governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* The issue is remand to the Plan Administrator for consideration of information submitted after the administrative appeal ended. Based on the complaint, the motions, responses, and exhibits, the arguments of counsel, and the relevant law, this court grants the motion to remand. This suit is remanded to the plan administrator for 90 days to permit the Plan Administrator to consider evidence that was submitted after the administrative appeal ended. This case is stayed and administratively closed pending that review. The parties may reinstate this case to the active docket by filing a motion to do so within 14 days after the Plan Administrator concludes its review.

The reasons for this ruling are explained below.

**I.     Background**

Bob Jones worked as an accountant for Lyondell Chemical Company from 1972 to 2009. Lyondell established the Plan to provide long-term disability ("LTD") benefits to its eligible employees. Lyondell is the Plan's sponsor and administrator. Lyondell self-funded the Plan,

designated Metropolitan Life Insurance Co. ("MetLife") as the claims fiduciary, and granted MetLife discretionary authority to determine eligibility for Plan benefits and to interpret its terms.

In January 2010, Jones filed a claim for LTD fits under the Plan, claiming that he had become disabled in July 2009 due to severe chest pain. (Docket Entry No. 24, Appx., at 1–12). On February 25, 2010, MetLife informed Jones that it was denying his claim and described his appeal rights. (*Id.* at 13–17). Jones retained a lawyer, Tom Shipp, to represent him. In April 2010, Shipp appealed MetLife's denial on Jones's behalf and submitted records from two of Jones's treating physicians. (*Id.* at 18–19). MetLife sent Shipp a detailed report and a copy of MetLife's administrative claim file for Jones, which included the documents MetLife received from Shipp during the appeal process.

In an Agust 23, 2010 letter, MetLife provided a detailed synopsis of the medical information in the claim file and informed Shipp that it was upholding the denial of Jones's claim. The letter stated:

> Upon request, MetLife will provide you with a copy of the documents, records or other information, we have that are relevant Mr. Jones's claim and identify any medical or vocational expert(s) whose advice was obtained in connection with his claim. You also have the right to bring [a] civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.
>
> Please be advised that under the provisions of Mr. Jones' Plan, no further administrative appeals are available to him concerning his disability benefit.

(*Id.* at 36).

The letter also stated:

> Mr. Jones' file did not warrant further review by a board certified

>>cardiologist in an effort to determine his functional limitation, as Dr. Uddin had explained several times during this appeal review that Mr. Jones' cardiac condition was stable and his chronic pain condition was not cardiac related. Please be advised, if additional medical information is submitted, by Dr. Uddin or any treating provider, in support of Mr. Jones functional limitations being related to his Coronary Artery Disease, we will be happy to review this information for consideration of benefits.

(*Id.* at 35–36).

On April 28, 2011, Adam Criaco, Jones's lawyer in this action, notified MetLife that he was representing Jones and asked about additional information or documentation needed for MetLife to complete its claim evaluation. (*Id.* at 37). MetLife responded as follows:

>>Please be advised the uphold determination of August 23, 2010 constituted completion of the full and fair review required by Mr. Jones' long term disability plan. Therefore, Mr. Jones already exhausted his administrative remedies under the plan and no further appeals will be considered.

>>Please be advised you have the right to bring [a] civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.

>>Under the provision of Mr. Jones' Plan, no further administrative appeals are available to him concerning his disability benefit.

(*Id.* at 38).

In mid-June 2011, Criaco sent MetLife a series of letters requesting (among other things) the documents MetLife used to evaluate Jones's claim. (*Id.* at 39–42). In a letter dated July 12, 2011, MetLife sent Criaco a copy of the administrative claim file. (*Id.* at 43). Neither Jones nor Criaco sought to supplement the administrative record at that point. Instead, on August 8, 2011, Jones filed suit in the 152nd Judicial District Court of Harris County, Texas. (*Id.* at 44–62). The defendants removed the lawsuit to federal court, where it was docketed as Civil Action No. 4:11-cv-03328.

Jones served the defendants with written discovery and a copy of a subpoena that he had served on the Social Security Administration for a copy of its file on his claim for Social Security Disability Income ("SSDI") benefits. Before the initial pretrial and scheduling conference could occur, Jones voluntarily dismissed the suit. In a letter dated December 14, 2011, Criaco informed the defendants that Jones wanted to dismiss his pending action "[f]or personal reasons and time constraints." (*Id.* at 63). The next day, Jones filed an Unopposed Motion to Dismiss Without Prejudice, which was granted on December 16, 2011.

After the dismissal, Criaco sent MetLife additional documents in an attempt to supplement the administrative record. On January 6, 2012, Criaco sent defendants' counsel 280 pages of additional documents "offered for incorporation into the administrative record." (*Id.* at 64–70). Criaco explained that "[m]ost, if not all of the information and documentation that is attached for incorporation and re-evaluation was provided in some form or fashion in previous correspondence." (*Id.* at 70). Criaco included the following chronology of the documents:

| May 2007 | Dr. Ott and Pain | Heart bypass. Coronary artery grafting Management Group at St. Lukes |
| --- | --- | --- |
| 2007 | Dr. Uddin | Thallium Stress Test |
| February 2008 | Dr. Ott | Chest X-Ray |
| June 2008 | Dr. Singleton | Started pain management |
| August 2008 | Dr. Uddin | Thallium Stress Test |
| February 2009 | Dr. Uddin | Heart Catheterization |
| June-July 2009 | Dr. Uddin | External Contrapulsation Therapy (ECP) |
| July 10, 2009 | Dr. Uddin | Instructed not to return to work |

| July 22, 2009 | Dr. Singleton | ESI injections at T7, T8, T9, T10 |
| --- | --- | --- |
| August 2009 | Dr. Ott | Wire removal from 5/07 heart surgery |
| August 2009 | Dr. Ott | CAT scan |
| September 23, 2009 | Dr. Singleton | ESI injections at T7, T8, T9, T10 |
| September 23, 2009 | Dr. Singleton | ESI injections at T7, T8, T9, T10 |
| October 2009 | Dr. Singleton | Referred to Dr. Phan for neurostimulator |
| December 2009 | Steve Smith, PhD | Psychological Exam related to neurostimulator |
| January 2010 | | Heath insurance (Aetna) denied neurostimulator |
| December 1, 2010 | | Aetna reversed decision for neurostimulator |
| December 22, 2010 | Dr. Phan | Trial neurostimulator (dorsal column stimulator) |
| January 26, 201[1] | Dr. Phan | Permanent neurostimulator (dorsal column stimulator) |

The neurostimulator referred to appears to be treatment after a late 2009 diagnosis of reflex sympathetic dystrophy syndrome. (Docket Entry No. 15, ¶ 7). Criaco did not include the date of diagnosis in his chronology. Paragraphs 11 and 12 of the Jones's complaint in the first lawsuit alleged that he was afflicted with reflex sympathy dystrophy and that Aetna had reversed its earlier refusal to pay for a neurostimulator, which was surgically implanted in the spring of 2011. (Docket Entry No. 24, Appx., at 47–48). Criaco did not supplement the record before filing the first suit with the additional information for the period between January and August 2011.

In a letter dated January 30, 2012, Criaco sent defense counsel what was purportedly a complete copy of the Social Security Administration's record on Jones's claim for SSDI benefits. (*Id.* at 71–72). Jones had applied for SSDI benefits on April 10, 2011 and had been awarded them on August 17, 2011. (Docket Entry No. 15, ¶¶ 11, 15–16, Ex. E).

In a letter dated February 16, 2012, MetLife informed Criaco that because Jones had closed the administrative record by filing the first lawsuit, the letters and the additional documents Criaco had recently submitted would not be considered. (*Id.* at 81–82). Later that same month, Criaco sent MetLife copies of the documents he had sent to defense counsel. (*Id.* at 83–99). In March 2012, Criaco sent MetLife additional documents. The new documents included vocational assessments from Robert Cox dated January 28, 2012 and February 13, 2012, (*id.* at 100–13); the claims-handling report of Ted Marules, Sr. dated February 20, 2012, (Docket Entry No. 15, Ex. F); and an SSA "Function Report" dated July 11, 2011, (*id.*, Ex. G).

In a letter dated April 26, 2012, MetLife stated that Criaco's efforts to supplement the administrative record were untimely. The letter then stated:

> In August 2010, we notified your client, that we were upholding the denial of your client's claim and stated that we would consider additional materials relating to your client's cardiac condition should you decide to submit them. However, this was not an open-ended invitation. Under governing law, you were not entitled to submit, and have MetLife consider, additional materials after your client filed suit on August 8, 2011. By filing suit, the administrative record closed. *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). As such, your February 20, and March 12, 2012 attempts to supplement the administrative record [are] untimely, and we will not consider the additional materials you provided.
>
> In addition, as the administrative record in this matter includes only those materials compiled through the date your client filed suit, enclosed as you requested is a copy of the administrative claim file compiled through August 8, 2011.

6

(Docket Entry No. 24, Appx., at 120–21).

On June 28, 2012, Jones filed this lawsuit. (Docket Entry No. 1). On November 5, 2012, Jones moved to remand to MetLife so that the Plan Administrator could consider "new medical and vocational evidence" that "came into existence after the LTD appeal deadline had expired." (Docket Entry No. 15, ¶¶ 22-23). Jones also argued that MetLife should be equitably estopped from opposing remand based on the August 23, 2010 letter stating that MetLife would consider any additional medical information that Jones submitted.

In response, MetLife argued that as a matter of law the administrative record closed when Jones filed his first lawsuit. (Docket Entry No. 24, at 10). MetLife also argued that its August 23, 2010 statement did not estop it from opposing remand because the letter was not an offer to continue submitting future evidence and because Jones had chosen to file suit rather than pursue additional administrative remedies. (*Id.* at 18–20). Lyondell responded on similar grounds, arguing that this court should not remand because Jones never moved to remand his first lawsuit. (Docket Entry No. 25, at 1–2). In reply, Jones argued that his dismissal of his first lawsuit served no improper purpose and that remand would have no prejudicial effect on the defendants. (Docket Entry No. 26, at 4–6).

These arguments and the responses are discussed below.

## II.     The Legal Standard for a Motion to Remand

In an ERISA dispute, parties are required to exhaust their administrative remedies before filing suit in federal court. *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). The district court reviews the administrative record to determine whether the plan administrator abused its discretion in denying benefits. *Holland Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009). Once suit has been filed, the parties are not permitted except

under limited circumstances to supplement or expand the record. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 298–300 (5th Cir. 1999) (en banc), *abrogated on other grounds by Metro. Life Ins. v. Glenn*, 554 U.S. 105 (2008). Each party must generally make its record before the case comes to federal court. *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 397 n.5 (5th Cir. 2006).

Courts have found "special circumstances" justifying remand when new evidence arises that was unavailable before suit, but have refused to remand when the evidence existed before suit. *See Hamburg v. Life Ins. Co. of N. Am.*, 470 F. App'x 382, 385–86 (5th Cir. 2012) (per curiam) (finding remand improper when the plaintiff had an opportunity to provide claims administrator with an SSA decision before filing suit); *Offutt v. Prudential Ins. Co. of Am.*, 735 F.2d 948, 950 (5th Cir. 1984) ("If new evidence is presented to the reviewing court on the merits of the claim for benefits, the court should, as a general rule, remand the matter to the plan administrator for further assessment."); *Mercer v. Life Ins. Co. of N. Am.*, 874 F. Supp. 2d 610, 633 (W.D. La. 2012) (declining to remand when the plan administrator "already had the opportunity to consider the SSA decision, but declined to do so."); *Kelley v. Life Ins. Co. of N. Am.*, 2007 WL 2159366, at *5 n.7 (S.D. Miss. July 26, 2007) (remanding where evidence became available only after administrative process had been completed and suit had been filed); *Hedgepeth v. Blue Cross & Blue Shield of Miss.*, 2006 WL 2331191, at *1 (N.D. Miss. Aug. 10, 2006) ("[N]ew evidence on the merits of Plaintiff's claim for benefits qualifies as a special circumstance sufficient to warrant this case being remanded to the plan administrator for further review."). Some courts, however, have concluded that remand is more broadly justified. *See Moller v. El Campo Aluminum Co.*, 97 F.3d 85, 89 (5th Cir. 1996) (remanding when an SSA decision issued before the plaintiff filed suit challenging the benefits denial was not provided to the doctors on the plan's medical board who resolved administrative appeals from benefits-denial

decisions); *Hartwell v. U.S. Foodservice, Inc.*, 2010 WL 3713496, at *9 (S.D. Miss. Sept. 13, 2010).

## III. Analysis

It is undisputed that at least some of the evidence submitted after the administrative appeal from the benefits denial did not exist when Jones filed his first lawsuit. MetLife appears to have taken the position that once Jones filed suit, it was under no obligation to consider evidence related to his benefits claim, even if that evidence did not exist before the suit was filed. MetLife relied on *Vega* for the proposition that the administrative record closed once Jones filed his first lawsuit.

"[T]he administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega*, 188 F.3d at 300. But the administrative record may also include new evidence obtained after suit is filed. *See Offutt*, 735 F.2d at 950; *see also Hamburg*, 470 F. App'x at 385–86 (holding that remand under *Offutt* was inappropriate in light of *Vega* because the plaintiff obtained the additional evidence at issue nearly 18 months before filing suit). Courts may remand when, after filing suit, the plaintiff obtains new evidence that he could not have submitted before filing suit. *See, e.g.*, *Kelley*, 2007 WL 2159366, at *5 n.7 (remanding to allow the plan administrator to consider evidence that became available only after the administrative process had been completed and suit had been filed); *Hedgepeth*, 2006 WL 2331191, at *1 (same).

At least one court within this circuit has expressed skepticism about interpreting *Vega* as an inflexible and unwavering rule. *See Hartwell*, 2010 WL 3713496, at *7 ("Defendant baldly argues that 'the court may only consider the evidence presented to [the plan administrator] when it made the decision to deny Plaintiff's claim and appeal.' Defendant offered no authority for this position, and the issue delves into a potentially murky area of Fifth Circuit jurisprudence . . . [because] *Vega*

9

fails to 'provide any guidance regarding the limits of post hoc accretion of the administrative record.'" (citation omitted) (quoting *Needham v. Tenet Select Benefit Plan*, 2004 WL 193131, at *7 (E.D. La. Jan. 30, 2004))). "'[P]assages [from *Vega*] suggest that new evidence submitted by the claimant becomes a part of the administrative record even if it is submitted after the administrator has reached its final decision.'" *Id.* (quoting *Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 320 (5th Cir. 2007)).

It appears that Jones's counsel tried to submit documents after the first suit was filed but before the second suit was filed. It is appears that at least some of what counsel submitted included documents that could not have been submitted before the administrative process was completed and the first lawsuit was filed. It is unclear precisely which documents could not have been submitted until after the administrative appeal ended and which could have been submitted during the appeal. Some of the documents appear to predate the final appeal and were submitted before the first suit was filed. Some documents appear to predate the final appeal but were not submitted until after the first suit was filed. Other documents appear to postdate the final appeal and the filing of the first lawsuit. A critical document in this last category is the Social Security Administration's determination awarding Jones SSDI benefits. MetLife refused to consider any of the documents.

Remand is appropriate based on the unusual circumstances of this case. What constitutes the administrative record for ERISA review purposes is a context-dependent question for this court. *See, e.g.*, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006) ("[W]hen deciding what record a court should use to decide whether the administrator's decision was reasonable, '[i]t is not clear that any single answer covers all of the variations in ERISA cases; the 'record' may depend on what has been decided, by whom, based on what kind of information, and also on the

standard of review and the relief sought[.]'" (quoting *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 57 (1st Cir. 1999))). The record this court must consider includes not only documents submitted to the Plan Administrator during the administrative appeal and considered in deciding the appeal, but also documents submitted after the appeal ended that the Plan Administrator had a "fair opportunity to consider" before suit was filed, *Vega*, 188 F.3d at 300, and new evidence that the plaintiff gained access to only after filing suit, *Offutt*, 735 F.2d at 950. It is appropriate for courts to remand for a plan administrator to consider evidence that was not in the administrative record before suit is filed because that evidence came into existence only after suit was filed. *See Offutt*, 735 F.2d at 950. "If, as *Vega* suggests, this Court's review is not limited to the information presented to the Plan Administrator prior to the decision, then remand would be consistent with *Vega*'s policy of encouraging resolution at the administrative level." *Hartwell*, 2010 WL 3713496, at *9.

The fact that Jones voluntarily dismissed his first suit without seeking remand is not a sufficient basis to preclude remand at this point. At least some of the evidence, and potentially important evidence, that Jones now asks the Plan Administrator to consider did not exist when the first suit was dismissed. A primary goal of remand is to avoid judicial resolution of purely administrative benefits determinations. *See Moller*, 97 F.3d at 89 ("[O]nce it was known that relevant evidence had not been given to the doctors, the evidence should have been supplied to them for redetermination and the lawsuit dropped. The judiciary's scarce resources should not be wasted on problems the parties could have, and should have, taken care of themselves."); *Ciaramitaro v. Unum Life Ins. Co. of Am.*, 2013 WL 1339076, at *3 n.1 (6th Cir. Apr. 4, 2013) ("[W]here additional evidence is submitted to the plan, especially evidence as compelling as a confirmation of a diagnosis, ERISA ought to encourage plans to reevaluate their previous decisions, not bind

11

themselves to them.").

*Vega* does not prevent remand for MetLife to consider the evidence Jones submitted after filing the first suit; given the nature of the evidence, remand would hardly be a "useless formality." *See Offutt*, 735 F.2d at 950. The parties will not be prejudiced by remand for a limited period to consider Jones's additional evidence. *See, e.g.*, *Kelley*, 2007 WL 2159366, at *6 ("[Defendant argues that it would be prejudiced by a remand because it would delay the adjudication of this dispute and increase expenses. The court does not find this to be compelling. Remand for sixty days to allow [the Plan Administrator] to consider [additional evidence] and make a new disability determination (while staying this action) would be a minor inconvenience. After the new disability determination is made, LNA can (if necessary) re-urge and supplement its existing motion for summary judgment, without having to duplicate its work, thus cutting down on additional expenses."). There is support within this circuit for remanding so that the Plan Administrator has a fair opportunity to review evidence previously submitted that the administrator refused to consider. *See, e.g.*, *French v. Dade Behring Life Ins. Plan*, 2011 WL 5599186, at *4 (M.D. La. Nov. 17, 2011); *Hartwell*, 2010 WL 3713496, at *9.

This court will remand this suit to the Plan Administrator for 90 days to permit it to consider the evidence Jones submitted after the administrative appeal ended. This case is stayed and administratively closed pending that review. The parties may reinstate this case to the active docket by filing a motion to do so within 14 days after the plan administrator concludes its review.

## IV. Conclusion

The motion to remand is granted. The Plan Administrator is ordered to consider Jones's additional evidence and make a new disability determination within 90 days of entry of this order. This case is stayed and administratively closed pending that review. The parties may reinstate this case to the active docket by filing a motion to do so within 14 days after the Plan Administrator concludes its review.

SIGNED on May 29, 2013, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge